## OSCAR RAMSEY v. THE STATE.

No. 11970. Delivered November 14, 1928.
Rehearing denied State January 2, 1929.

The opinion states the case.

*E. Harold Beck* and *Sid Crumpton,* for the appellant.

*Wright Patman,* District Attorney, Bowie County, and *A. A. Dawson* of Canton, State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction for manslaughter; punishment, two years in the penitentiary.

Appellant did not deny that he shot and killed deceased, but claimed such act to have been the direct result of an inflamed and agitated mind incapable of cool reflection, a claim seemingly upheld by the verdict of the jury finding him guilty only of manslaughter. A plea for suspended sentence was filed, but the jury did not recommend same in their verdict, and appellant complains of matters admitted in evidence which may have operated to prevent his getting such suspension of sentence.

We are not in accord with the attack on the charge of the court for submitting murder. The case of Miles v. State, 200 S. W. Rep. 158, cited by appellant, seems easily distinguishable on the facts from the case before us. Here threats were shown to have been made before the killing, and seemingly some time elapsed after appellant learned of the insulting conduct, before the killing took place, and there is also a question as to whether the killing occurred as soon as the parties met, after appellant received his information.

The State introduced the mother of deceased who was not at the scene of the killing, and whose testimony went no further than to state that deceased left home that morning clad in overalls, shirt and shoes, having in his possession his lunch in a pail and a bottle of milk in his pocket. The only other witness introduced in chief by the State was a young man who was with deceased at the time of the killing. He detailed how they were overtaken by appellant as they walked down the road; that appellant passed them a short distance, stopped his wagon and got out of it with a gun in his hand, and said to deceased: "Boyd, I am going to kill you." Deceased said: "Oscar Ramsey, don't shoot me." The witness testified that he also asked appellant not to shoot deceased. He said appellant waited a minute or two and then raised his gun and said, "I am going to kill you; you have ruined my family," and fired as soon as he said it. Deceased fell, and appellant loaded his gun and started to shoot again, but upon remonstrance of witness desisted. Appellant appeared nervous and raised his gun up two or three times as though to fire again but finally left the scene. The State then rested its case. There appears in the testimony of neither of these witnesses the slightest suggestion that the killing was upon any other motive than rage resulting from knowledge of the conduct of the deceased toward appellant's daughter. Appellant took the stand as his own first witness and testified that he killed deceased because he had just learned that deceased was the author of the ruin of his sixteen-year-old daughter. On cross-examination, as appears in bill of exceptions No. 2, appellant was asked, over objection, if it was not a fact that in 1926 he and deceased were in partnership in manufacturing liquor, and if it was not a fact that whisky was manufactured on the premises of appellant, and if it was not a fact that they had sold whisky and each had benefited thereby. This bill is approved with the qualification that the State contended in this case that appellant's motive for this killing was that defendant and deceased had fallen out because of differences arising from their joint activity in making and selling whisky, and that appellant killed deceased because he feared deceased was going to turn state's evidence and testify before the grond jury, and that the State had introduced several witnesses tending to support such theory as a motive for the crime. Bill of exceptions No. 3 sets up that the State, over objection, placed witness Proctor on the stand who testified that the defendant together with deceased and another, manufactured liquor on the premises of appellant, and that witness had

seen them so engaged. This bill is approved with reference to and adopting the same qualification as above. We note that Proctor was the State's second rebuttal witness, the first being a member of the grand jury who testified only to a contradiction in the testimony of appellant's daughter. Bill of exceptions No. 4 sets up that one Franks testified, over objection, that he worked for defendant and deceased in making whisky. This bill is approved and the same qualification above referred to is appended. We note that Franks was the State's third rebuttal witness.

It is plain that proof that appellant made whisky, or sold it, would be matter wholly extraneous in this case. That it is capable of grave injustice, and altogether liable to cause the jury to refuse the application for suspended sentence, is also clear. Such testimony would not be admissible as affecting the question of suspended sentence, nor as material to any issue in this case, unless the State could go further and prove that by reason of such making or selling, or that out of the relationship of appellant and deceased in such making and selling, there arose enmity or ill-feeling which might be looked to as furnishing a motive for the killing. We have given the testimony of each witness in this case our closest scrutiny to see if there be any one who swore to any difference or disagreement, or to any facts tending to show a disagreement or difference between deceased and appellant growing out of any making or selling of whisky. We have found nothing. The witness Franks, who said he saw appellant and deceased and one Cooper making whisky on appellant's place, also said: "I do not know anything about Flannery and Ramsey falling out over the liquor." Witness Proctor nowhere suggests that he ever heard or knew of any difference between them arising from such cause. No other witness suggests any ill-feeling or enmity between them arising from such relationship. In this condition of the testimony, the introduction of facts showing appellant guilty of the extraneous crime of making and selling whisky, was clearly erroneous. Mr. Branch on page 1046 of his Annotated P. C., supports, by citation of many authorities, the proposition that proof of an extraneous crime or disconnected transaction should not be admitted to show motive unless there is some logical connection between same and the particular act under investigation. Phillips v. State, 22 Texas Crim. App. 139. Manifestly there was no testimony tending to show any connection between the extraneous crime proven and the particular act for which appellant was convicted. In

our judgment the error of the admission of this testimony was of such materiality as to demand a reversal.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

ON STATE'S MOTION FOR REHEARING.

HAWKINS, JUDGE.—In view of the state's motion for rehearing we have again carefully reviewed the statement of facts and are still unable to discover any testimony which made pertinent the evidence for the admission of which a reversal was ordered.

The motion is overruled.

*Overruled.*